UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| KAYLA D. LANGLEY | CASE NO. 2:18-CV-01105 |
| VERSUS | JUDGE JAMES D. CAIN, JR. |
| RICHARD WISEMAN, ET AL. | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is a Motion to Dismiss or, alternatively, Motion for Summary Judgment, filed by defendants in this matter pursuant to Federal Rules of Civil Procedure 12(c) and 56(a). Plaintiff Kayla D. Langley opposes the motions. Doc. 28.

### I.
### BACKGROUND

This suit arises from the arrest and detention of Kayla Danielle Langley on September 2, 2017, in Allen Parish, Louisiana. Doc. 1. Langley was arrested on a charge of simple battery pursuant to a warrant issued for an incident that occurred on April 14, 2017. *See* doc. 28, att. 4 (affidavit for arrest warrant). The warrant was issued based on the affidavit of Deputy Joshua Manuel, an employee of the Allen Parish Sheriff's Office. *Id.*

According to the dispatch notes from the April 2017 incident, a woman named Tyra Ardoin had requested assistance at her residence, 3534 Highway 383 in LeBlanc, Louisiana, because of a conflict with her daughter, "Kayla Langley."[1] Doc. 28, att. 2, p. 1. The dispatch notes, however, also identified the subject as "kayla nicole fontenot . . . w-f

---

[1] In Manuel's incident report the address was amended to "3768 Hwy 383." Doc. 28, att. 2.

dob 11-23-1972." *Id.* The information in the dispatch notes was provided by Lieutenant Scott Stalsby, the second officer on the scene, by radio to dispatch. Doc. 28, att. 1, pp. 19, 27–28, 39. It was overheard by Manuel while he was en route, but he admits that he did not pay attention and instead intended to rely on the print-out he would later receive from dispatch. *Id.* at 39, 46. In his incident report Manuel identified the subject as "Kayla Langley," and in his affidavit in support of the arrest warrant he identified her as "Kayla Danielle Langley," born on January 31, 1985.[2] Doc. 28, att. 2, p. 2; doc. 28, att. 4.

Manuel later blamed the discrepancy on an error by dispatch, which was allegedly responsible for taking suspect information from Stalsby and using it to retrieve the suspect's name, date of birth, and social security number from the Department of Motor Vehicles. Doc. 28, att. 1, pp. 41–42. He admitted that he never looked at the dispatch notes or asked Ardoin or Joseph Fontenot to confirm the suspect's full name or other identifying information. Doc. 28, att. 1, pp. 38–45. Instead, Manuel's affidavit led to an arrest warrant for Kayla Danielle Langley, born on January 31, 1985, and residing at 3534 Highway 383 (Ardoin's address). *See* doc. 28, att. 9.

Kayla D. Langley, the plaintiff in this matter, was arrested in the early hours of September 2, 2017, after Deputy Richard Wiseman responded to her call to have an ex-boyfriend removed from her home. Doc. 28, atts. 5 & 6; *see* doc. 1. Langley's birthdate, name, and social security number matched the information of the "Kayla Danielle Langley"

---

[2] The confusion may have arisen from the alleged perpetrator's relationship with Joseph Fontenot, who was a witness to the incident and was identified in the dispatch notes as her boyfriend. Doc. 28, att. 2, p. 1. Further complicating matters, it appears that Kayla Danielle Langley was once married to one of Tyra Ardoin's sons. Doc. 28, att. 1, p. 54.

identified in the arrest warrant, but the home address to which officers had been dispatched did not match the one provided in the warrant. *See* doc. 28, atts. 5 & 9.

After he removed the unwanted individual, Wiseman was informed by dispatch that Langley had an active warrant for simple battery. Doc. 28, att. 6, p. 2; doc. 28, att. 11, p. 14. Wiseman arrested Langley around 1:00 am, after comparing the information she provided with the warrant. Doc. 28, att. 11, p. 14; doc. 28, att. 10, p. 1; *see* doc. 28, att. 7. Though Langley insisted that there was a mistake, she was transported to the Allen Parish Jail. Doc. 28, att. 10. Wiseman testified that he checked the affidavit against the incident report from April 2017 and discovered the discrepancies in the subject's name and birthdate. Doc. 28, att. 11, pp. 13–14. He informed his superior, Chief Deputy Blair Fontenot, who said that it "would have to be looked into." *Id.* at 21–26; *see* doc. 28, att. 12, pp. 11–12. Wiseman then instructed another officer, Bryan Hargrave, to "[b]ook her." Doc. 28, att. 10, p. 2. Langley was not released until 4:11 am, when Tyra Ardoin arrived at the station and verified that Langley was not the subject of the arrest warrant. Doc. 28, att. 7. Langley states that, despite her brief detention, her book-in pictures were disseminated to sources which posted them online. Doc. 28, att. 10, p. 2.

As a result of the stress of the event and the publication of her arrest, Langley claims that she has suffered depression and other mental health conditions as well as shame and humiliation at her workplace. Doc. 1. She filed suit in this court under 42 U.S.C. § 1983 and state tort law, naming as defendants Deputies Wiseman, Manuel, Fontenot, and Hargrove, in their individual and official capacities; and Allen Parish Sheriff Doug Hebert, in his official capacity. *Id.* She alleges that the defendants wrongfully arrested and detained

her after a reckless investigation, due to inadequate training and disregard for established procedures. She also maintains that supervisory officers are liable for implementing constitutionally deficient policies and that defendants are generally liable for failure to intervene, negligence, and conspiracy to deprive her of her constitutional rights.

The defendants now move for dismissal of the civil rights claims against Hebert and the § 1983 conspiracy claim, or in the alternative for summary judgment on those claims. Langley opposes the motion and provides evidence in support of her claims. Doc. 28. Accordingly, the court treats the motion as one for summary judgment.

## II.
## STANDARDS GOVERNING MOTION FOR SUMMARY JUDGMENT

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is

not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## III.
## LAW & APPLICATION

### A. Supervisory/Monell Liability

42 U.S.C. § 1983 provides a cause of action for violation of civil rights by a state actor. To state a claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). There is no vicarious liability under § 1983. *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001). Instead, a supervisory official may be held liable only if he (1) affirmatively participates in the acts causing the alleged constitutional deprivation or (2) implements unconstitutional policies that cause the deprivation. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).

Langley seeks to hold Hebert liable under § 1983, in his official capacity. She complains that he failed to "train his officers or institute procedures on verifying the identity of an individual listed in an arrest warrant before effecting an arrest." Doc. 1, p. 2. Accordingly, she alleges that her arrest and detention resulted from policies and practices he established and promulgated. *Id.* at ¶¶ 49, 54, 61. She also asserts that he is liable as supervisor of the other defendants. *Id.* at ¶ 5.

"Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999). A government entity cannot be held liable on a § 1983 claim under a theory of *respondeat superior*. *Monell v. New York City Dep't of Soc. Svcs.*, 436 U.S. 658, 691 (1978). Instead, local government is liable under § 1983 when its policies or customs cause constitutional torts. *Id.* at 694. To establish such a claim, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right. *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009).

To the extent Langley seeks to hold Hebert liable under § 1983 based on a theory of vicarious liability/*respondeat superior*, these claims have no legal basis and must be dismissed. As for the *Monell* claim, the "official policy" prong encompasses "the decisions of a government's law-makers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). The plaintiff's description of the policy or custom must contain

specific facts; it cannot be vague or conclusory. *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997).

When the municipal liability is based on failure to train, the plaintiff must also show that the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights. *Thompson*, 245 F.3d at 459. A plaintiff may sometimes establish deliberate indifference through a single incident, where the facts should have made it apparent to the policymaker "that a constitutional violation was the highly predictable consequence of a particular policy or failure to train." *Burge v. St. Tammany Par.*, 336 F.3d 363, 373 (5th Cir. 2003). This exception, however, is narrow and one that the Fifth Circuit has been reluctant to expand. *Id.*; *see also Peña v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018). Ordinarily, a plaintiff must allege a pattern of similar constitutional violations by untrained employees in order to show deliberate indifference. *Peña*, 879 F.3d at 623–24.

In Langley's opposition, she focuses on "the lack of any policy for ensuring accurate arrest warrants or handling clear evidence of an inaccurate arrest warrant" as bases for Hebert's liability. Doc. 28, p. 16. To this end she notes (1) Manuel's preparation of the inconsistent affidavit, (2) his failure to correct the record despite his presence at the scene of Langley's arrest, and (3) the deputies' delay in investigating and acting on evidence that they had arrested the wrong person. Even if the alleged errors are considered part of a pattern, they do not point to training or supervision "that is so clearly inadequate as to be obviously likely to result in a constitutional violation." *Brumfield v. Hollins*, 551 F.3d 322, 329 (5th Cir. 2008). Instead, they show at most negligent training and supervision as well

as individual negligence or more on the part of the deputies involved. Accordingly, Langley cannot prevail on her § 1983 claims against Hebert. To the extent that she intends to hold him liable under her state law claims, however, these causes of action survive.

### B. Conspiracy

Langley alleges that Wiseman, Manuel, and Fontenot are liable for "reach[ing] an agreement amongst themselves to wrongfully arrest [her] for [a] warrant that was not properly confirmed, and continue holding [her] after her identity was established . . . ." Doc. 1, ¶ 57. She asserts that they acted with other unknown coconspirators and that each defendant committed overt acts in furtherance of the conspiracy. *Id.* at ¶¶ 58–59. Defendants maintain that she cannot prevail on this claim.

A conspiracy may be charged under § 1983 in order "to impose liability on all defendants without regard to who committed the particular act . . . ." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995). "Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based. Bald allegations that a conspiracy existed are insufficient." *Anderson v. Law Firm of Shorty, Dooley & Hall*, 393 F. App'x 214, 217 (5th Cir. 2010) (quoting *Lynch v. Cannatella*, 810 F.2d 1363, 1369–70 (5th Cir. 1987)). To support a conspiracy claim, a plaintiff must allege facts suggesting "an agreement between . . . defendants to commit an illegal act" and "an actual deprivation of constitutional rights." *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994). Without an underlying § 1983 violation, there can be no conspiracy claim. *Hale*, 45 F.3d at 920.

Langley's allegations and evidence point to Manuel's responsibilities for mistakes in the warrant, but do not show that he coordinated with any other defendant to effect her

unlawful arrest.[3] As for Fontenot and Wiseman, the sole basis for their liability under the conspiracy charge appears to be the agreement to book Langley pending further investigation, even though Wiseman admitted to having doubts about her identity. By Langley's admission, however, her birthdate, name, and Social Security number matched the information provided in the arrest warrant. Her allegations do not show a constitutional violation on behalf of officers who held her a couple of hours longer while her claims were investigated, and so they cannot support a claim of conspiracy.

---

[3] Police records and the testimony of Deputy Wiseman indicate that only one other officer, Deputy Garrett Beeson, was on the scene. *E.g.*, doc. 28, att. 11, p. 14. In her affidavit Langley asserts that Manuel also responded to the call. Doc. 28, att. 10. She does not, however, allege that he played any further role in her arrest. Accordingly, his presence on the scene is not material to her conspiracy claim.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 14] will be granted and the Motion to Dismiss [doc. 14] will be denied as moot. Accordingly, the § 1983 claims against Hebert and the conspiracy claim will be dismissed with prejudice.

**THUS DONE** in Chambers on this __16__ day of __Sept__, 2019.

_____
JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**