UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **KAYLA DANIELLE LANGLEY** | **CASE NO. 2:18-CV-01105** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **RICHARD WISEMAN ET AL** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

A jury trial in this matter was held on January 23 and January 24, 2023; however, following the dismissal of claims under 42 U.S.C. §1983, the Defendants moved to strike the jury, invoking Louisiana Revised Statutes section 13:5105.[1] Proceeding as a bench trial, the remaining claim before the Court is a delictual action filed by Kayla Danielle Langley against Richard Wiseman, Josh Manuel, Blair Fontenot, Brian Hargrove, and Sheriff Doug Hebert ("Defendants") seeking damages for injuries sustained in an arrest and detention on September 2, 2017, in Allen Parish, Louisiana. Doc. 1.

### I. BACKGROUND

Kayla Danielle Langley was arrested on a charge of simple battery pursuant to a valid arrest warrant issued for an incident that occurred on April 14, 2017. Doc. 118-1. The warrant was issued based on the affidavit of Deputy Joshua Manuel, an employee of the Allen Parish Sheriff's Office. *Id.* As a result of the stress of the event and the publication of her arrest, Langley claims that she has suffered depression and other mental health conditions as well as shame and humiliation at her workplace. Doc. 1.

---

[1] "No suit against a political subdivision of the state shall be tried by jury."

## II. <u>FINDINGS OF FACT</u>

A. Events of April 14, 2017

On April 14, 2017, the Plaintiff, went by the name Kayla Danielle Langley. Plaintiff resides at 20164 Harris Line Rd., Kinder, Louisiana, and was born in 1985. Kayla Danielle Langley and Matthew John Langley were at one time married. Matthew John Langley is the son of Tyra Ardoin.

Tyra Ardoin resides at 1709 Fuselier Ave., Basile, Louisiana, and has three children, two sons and one daughter. Tyra Ardoin's daughter's name is Kayla Nicole Langley and was born in 1982. Kayla Nicole Langley also goes by the name is Kayla Nicole Fontenot; however, she resumed using her maiden, former name sometime after she and her husband Dave Fontenot separated around 2016. On April 14, 2017, Kayla Nicole Langley was living with Joseph Fontenot in a trailer located at 3534 Hwy. 383, Indian Village, Louisiana.

On the evening of April 13, 2017, Ms. Ardoin arrived at 3534 Hwy. 383 and planned to stay the night with Kayla Nicole Langley and Joseph Fontenot. On April 14, 2017, sometime after midnight, an argument ensued between Kayla Nicole Langley and Joseph Fontenot. Tyra Ardoin asked her daughter, Kayla Nicole Langley to stop arguing with Joseph Fontenot. Kayla Nicole Langley responded to Tyra Ardoin by grabbing her hair and dragging her around the residence. At 3:00 AM, the Allen Parish Sherriff's Office received a domestic disturbance call via 9-1-1 from Tyra Ardoin because of an altercation with her daughter. On the 9-1-1 call, Tyra Ardoin said that her daughter, "Kayla Langley," was yelling at her, hit her in the head with an object, and drug her on the floor. During the 9-1-1 call, Kayla Nicole Fontenot (a/k/a "Kayla Langley") is still present at the trailer located at

3534 Hwy. 383. Indian Village. At 3:09 AM, Deputy Josh Manuel was dispatched to the 3534 Hwy. 383, Indian Village address in response to the call. Doc. 117-2. Additionally, at 3:45 AM and 3:49 AM respectively, Lieutenant Scott Stalsby and Officer Garret Beeson were dispatched to the 3534 Hwy. 383, Indian Village address. Doc. 117-7.

At 3:52 AM, Lieutenant Scott Stalsby arrived on scene and spoke with Tyra Ardoin and Joseph Fontenot. Doc. 117-7. At 3:54 AM, Deputy Manuel and Officer Garret Beeson arrived on scene. Doc. 117-7. Deputy Manuel searched the nearby woods for Kayla Nicole Fontenot (a/k/a "Kayla Langley") but she had vacated the 3534 Hwy. 383, Indian Village residence prior to any law enforcement arriving on the scene. Doc. 117-2. Upon returning from searching for the suspect, Deputy Manuel met with Tyra Ardoin, who informed Deputy Manuel that "Kayla Langley" had pulled her hair, knocked her down, and drug her through the house by her hair. Doc. 117-2. Also present at the time of the incident between Tyra Ardoin and Kayla Nicole Fontenot (a/k/a "Kayla Langley") was Joseph Fontenot. Doc. 117-2. Joseph Fontenot informed Deputy Manuel that Kayla Nicole Fontenot (a/k/a "Kayla Langley") approached Ms. Ardoin, pulled her hair, knocked her down, and dragged her through the house. Doc. 117-2. Ms. Ardoin told Deputy Manuel that she wanted to press charges against "Kayla Langley." Doc. 117-2. While on scene, either Tayra Ardoin or Joseph Fontenot, or both, told Lieutenant Stalsby that the Suspect was Kayla Nicole Fontenot with a date of birth in 1972. Doc. 117-7. Lieutenant Stalsby relayed that information to dispatch at 4:13 AM.

Deputy Manuel was tasked with preparing the incident report and arrest warrant, and he cleared the scene at 4:18 AM. Doc. 117-2, -7.  Once Deputy Manuel returned to the

Allen Parish Sherriff's Office, he received from the Dispatcher a DMV printout that identified the suspect as Kayla Danielle Langley with a date of birth of 1/31/1985. Deputy Manuel used this information to prepare both the incident report, which was completed on April 14, 2017, and approved at 9:53 AM on April 17, 2017, and the affidavit for arrest warrant, which was prepared on April 14, 2017. Deputy Manuel prepared the affidavit for arrest warrant with the "Dispatch Notes," which states in part "ap13 advise kayla nicole fontenot is the suspect w-f dob ****-1972." Docs. 117-2 & 118-1. The affidavit for arrest warrant that Deputy Manuel prepared was for one count of simple battery, which stated in part:

> Based on victim and witness statements on the morning of April 14, 2017 Miss. Kayla Danielle Langley did approach Miss. Tyra Annette Ardoin in the residence at 3534 Hwy 383 and pull her hair, Knock her down, and drag her through the house by her hair.

Doc. 117-4. The affidavit for arrest warrant lists Kayla Danielle Langley's date of birth as "01/31/1985." At 3:52 PM on April 14, 2017, Judge Davis of the 33rd Judicial District signed the arrest warrant effective.

B. **Events of September 2, 2017**

On September 1, 2017, at 9:00 PM, Plaintiff went to bed at her residence located at 20164 Harris Line Road, Kinder, Allen Parish, Louisiana. Plaintiff expected to wake the following morning, September 2, 2017, at 5:45 AM. On September 2, 2017, Plaintiff was scheduled to work at 7:53 AM at the Coushatta Casino as a bar tender and server. On September 2, 2017, between 12:00–12:20 AM, Plaintiff was awoken to loud banging on her residence's door caused by Jacob Barbre. Doc. 117-8, -9. Jacob Barbre is Plaintiff's ex-boyfriend and has physically abused her in the past. Plaintiff called the Allen Parish

Sherriff's Office directly at 12:22 AM. Doc. 117-8, -9. Plaintiff waited inside the residence for officers to arrive while Jacob Barbre remained outside pleading with Plaintiff to let him in.

Officer Richard Wiseman of Allen Parrish Sherriff's Office dispatched at 12:23 AM and arrived at Plaintiff's residence at 12:37 AM. Doc. 117-8, -9. On arrival, Officer Wiseman met Jacob Barbre, who was standing outside the residence, and Jacob Barbe informed Officer Wiseman that he wanted to ask Plaintiff if he could stay the night. Doc. 117-9. Officer Wiseman knocked on Plaintiff's door, and Plaintiff opened the door, informing Officer Wiseman that she wanted Jacob Barbre to leave the property. Doc. 117-9. At 12:40 AM, Officer Wiseman ran a driver's license check on Plaintiff. Doc. 117-8. Officer Wiseman was informed by Dispatch that Plaintiff had an active warrant for Simple Battery. Doc. 117-9. Officer Wiseman informed Plaintiff of the outstanding arrest warrant and then allowed her to change clothes and call her mother. At 12:56 PM, Officer Wisemen placed her in hand cuffs. Doc. 117-9. At 12:57 AM, Officer Wiseman read Plaintiff her Miranda rights and placed her in the patrol car. Doc. 117-9. Officer Wiseman transported Plaintiff to Allen Parish jail for booking on the warrant. Doc. 117-9. Jacob Barbre was informed that he would have to leave Plaintiff's property and was transported away by Officer Garret Beeson to a residence in Kinder, LA. Doc. 117-9.

While in the patrol car enroute to booking at Oberlin Jail, Plaintiff told Officer Wiseman that the warrant was wrong, that there had been a mistake. Officer Wiseman notified Dispatch of the possible mistake and had Dispatch bring the arrest warrant to his patrol unit at Oberlin Jail. Officer Wiseman reviewed the arrest warrant with Plaintiff who

was still adamant that she had not done the alleged offense indicated in the warrant. Also, when Plaintiff arrived at Oberlin Jail in Officer Wisemen's patrol unit, Plaintiff's mother, Janice Guillory, was present. Ms. Guillory was informed by Dispatch that Plaintiff was arrested for the allegedly "beating up Tyra Ardoin." Doc. 117-2. Plaintiff was booked at 1:31 AM and her mugshot was taken. Doc. 117-3. Plaintiff felt shocked, anxious, shamed, and scared as a result of being notified of an outstanding arrest warrant in her name, arrested, booked, stripped naked, jailed, and having her mugshot made publicly available.

While Plaintiff was being booked, Officer Wiseman went to the dispatch station, looked in the database, and pulled up all the reports from incident that occurred on the night of April 14, 2017, at the 3534 Hwy. 383, Indian Village address. Officer Wiseman noticed a discrepancy in the database related to the description of the suspect on the April 14, 2017 incident report and the person he had just taken in on the arrest warrant. Specifically, Officer Wiseman noticed that the name and birthday were different on the warrant than on the incident report. Officer Wiseman then spoke to the Jail Lieutenant Brian Hargrove and told him that he suspected that they had the wrong person in custody. Between 1:30 and 2:00 AM on April 14, 2017, Officer Wiseman and Jail Lieutenant Brian Hargrove called Blair Fontenot, the Warden, to notify him of a possible wrongly arrested person based on the discrepancies that Officer Wiseman had discovered after reviewing the reports from the incident on April 14, 2017. Over the phone with Officer Wiseman and Brian Hargrove, Warden Fontenot reviewed the name, date of birth, social security number, and determined that the warrant was valid but instructed them to follow-up with individuals involved in the April 14, 2017. Meanwhile, Janice Guillory called Tyra Ardoin and informed Tyra Ardoin

of her daughter's arrest. Tyra Ardoin acknowledged that there had been a mix up and that she had never been beaten up by Kayla Danielle Langley. Janice Guillory left the jail, picked up Tyra Ardoin, and transported her to the Oberlin Jail.

Teddy Rasberry relieved Brian Hargrove as Jail Lieutenant. Jail Lieutenant Rasberry called Warden Fontenot and told him that the victim from the April 14, 2017 incident, Tyra Ardoin, was at the Oberlin Jail and that she stated that Kayla Danielle Langley was not the person that assaulted her. Warden Fontenot ordered Kayla Danielle Langley's release from Oberlin Jail. Plaintiff was released from Allen Parish jail at 4:11 AM. Doc. 117-3. Plaintiff went to work at the Coushatta Casino on the morning of September 2, 2017.

### C. Plaintiff's Condition Post-Incident

After her arrest on September 2, 2017, Plaintiff made 14 visits in five- and one-half years to meet with Dr. Hayes for treatment. Dr. Hayes issued a battery of five psychological tests. Based on the results from those five tests, Plaintiff's personal history, and the Diagnostic and Statistical Manual of Mental Disorders 5 ("DSM-5"), Plaintiff was diagnosed with post-traumatic stress disorder ("PTSD") with anxiety and Major Depressive Disorder First Episode. The foregoing diagnoses were caused by the events surrounding her September 2, 2017 arrest where she was handcuffed, was booked, had her mugshot taken and made public, was incarcerated overnight.

### III.    CONCLUSIONS OF LAW

**A. Plaintiff has sufficiently plead a Louisiana negligence cause of action**

Plaintiff's claim for damages sustained as a result of the false arrest on September 2, 2017, is based in tort under the theory of negligence. Doc. 1, p. 10. Defendants claim that Plaintiff has alleged negligence on the parts of Deputy Manuel, Officer Wiseman, Lieutenant Fontenot, and Deputy Hargrove only as the events of September 1, 2017, [2] the date Plaintiff was arrested. Doc. 120, p. 3. Additionally, Defendants assert that no claims or allegations have been pled relative to Deputy Manuel's involvement in the April 14, 2017 investigation or preparation of the affidavit for arrest warrant. *Id.*

Pleadings perform the function of giving notice to the opposing parties, and the federal pleading rules generally require that a pleader put the other side on notice of the claim being asserted. Detailed assertions of facts underlying the claim generally are not required; that is, the plaintiff must state facts supporting a plausible, not just possible, claim. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, on page one of the Complaint (Doc. 1), Plaintiff alleges that "[b]ecause of a failure to accurately identify the subject of an arrest warrant, Kayla Langley was wrongfully arrested on September 1, 2017."[3] Further in the Complaint, the Plaintiff claims that "Officer Raspberry determines that Ms. Langley should be released from jail based on his comparison of Ms. Langley's identifying information with the identifying information on the arrest warrant." Doc. 1., p. 5, ¶23. Also, in Count VII of the Complaint,

---

[2] Plaintiff was arrested at 12:56 AM on September 2, 2017. Doc. 117-8.
[3] *See supra* note 2.

Plaintiff alleges that "[a]t all times relevant, Defendants had a duty to take reasonable measures to prevent the false arrest and continued detention of Ms. Langley." Doc. 1, p. 10, ¶ 65.

The Court finds that the pleadings functioned as to give notice to Defendants as to any negligence claims arising out of the preparation of the arrest warrant by Deputy Manuel while in the course and scope of his employment with Allen Parish Sherriff's Office. that led to the arrest of Plaintiff on September 2, 2017.

### B. Plaintiff has established liability under the Duty/Risk Standard

In Louisiana, to establish liability, negligence "is properly examined under the duty-risk analysis." *E.g.*, *Boykin v. Louisiana Transit Co.*, 707 So. 2d 1225, 1230 (La. 1998). Under the duty/risk analysis, the plaintiff must prove by a preponderance of the evidence

> five separate elements: (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element).

*E.g.*, *id.*

#### 1. *Duty*

Here, the relevant circumstances are Deputy Manuel's actions in preparing the affidavit for arrest warrant. Thus, the duty imposed by rule of law is such that Deputy Manuel is to choose a course of action which is reasonable when preparing an affidavit for arrest warrant. *See Boykin*, 707 So. 2d at 1230 ("In a proper duty-risk analysis, it is helpful to identify (1) the duty imposed upon the defendant by statute or rule of law . . . .").

## 2. *Breach*

The breach of duty inquiry is a question of fact, and thus "it is the fact-finder's role—either the jury or the court in a bench trial—to determine whether [the defendant's conduct] presents an unreasonable risk of harm." *E.g., Broussard v. State ex rel. Off. of State Bldgs.*, So. 3d 175, 183 (La. 2013). When conducting a duty-risk analysis, "it is helpful to identify . . . the conduct by defendant that allegedly constituted a breach of that duty." *Boykin*, 707 So. 2d at 1230.

Here, the Court identifies the conduct that Plaintiff alleges constituted a breach as Deputy Manuel's failure to identify the correct suspect on an arrest warrant. *See id.*; Doc. 11, p. 5. Evidence established at trial indicates that Deputy Manuel used a DMV printout that identified the suspect as Kayla Danielle Langley with a date of birth of 1/31/1985, and Deputy Manuel used this information to prepare both the incident report and the affidavit for arrest warrant. Doc. 117-2. Within the incident report, which was prepared the same day as the affidavit for arrest warrant, is a section labeled "Dispatch Notes" that states in part "ap13 advise kayla nicole fontenot is the suspect w-f dob ****-1972." Docs. 117-2 & 118-1. Also, on the incident report is a section labeled "Suspect" that states "Langley, Kayla Danielle," the Plaintiff. Doc. 117-2. Deputy Manuel input Kayla Danielle Langley's information into the suspect portion of the incident report as well as the affidavit for arrest warrant. On the affidavit for arrest warrant, Deputy Manuel inputs Kayla Danielle Langley's date of birth as "01/31/1985." Doc. 118-1, p.1. Thus, on April 14, 2017, Deputy Manuel failed to notice the discrepancy between the "Dispatch Notes" and "Suspect" sections of the incident report as well as the affidavit for arrest warrant. Because Deputy

Manuel failed to notice these discrepancies, he failed to further investigate any discrepancies during his preparation of the affidavit for arrest warrant. Upon completion of the affidavit for arrest warrant, Deputy Manuel did not re-check or cross-check the any of the suspect's information for correctness and accuracy.

Based on the totality of the circumstances surrounding the events on April 14, 2017, related to the preparation of the affidavit for arrest warrant, the Court finds by a preponderance of the evidence that Deputy Manuel failed to exercise reasonable care when he failed to name the correct suspect on the affidavit for arrest warrant; that is, he breached his duty owed to the Plaintiff. *See Mathieu*, 646 So. 2d at 323.

3. *Cause-in-Fact*

The cause-in-fact inquiry is a "but for" inquiry that asks whether the Plaintiff's arrest "would or would not have happened but for the defendant's substandard conduct." *See Boykin*, 707 So. 2d at 1230. In other words, the question is whether the Plaintiff would have had an arrest warrant issued in her name if Deputy Manuel would have exercised reasonable care in preparation of the affidavit for arrest warrant. *See id.* Thus, the Court finds by a preponderance of the evidence that if Deputy Manuel would have named Kayla Nicole Langley with a date of birth of 11/23/1982 in the affidavit for arrest warrant, Kayla Danielle Langley would not have been arrested on September 2, 2017.

4. *Scope of Liability*

The Court finds by a preponderance of the evidence that—as a matter of common sense, justice, and fairness—Plaintiff should recover from Deputy Manuel for her post-traumatic stress disorder, major depression, and anxiety that arose because of her arrest on

September 2, 2017. *See Spencer v. Valero Ref. Meraux, L.L.C.*, No. 22-CC-4692023, WL 533268, at *15 (La. Jan. 27, 2023).

5. *Damages*

Once the foregoing elements have been established by a preponderance of the evidence, the remaining inquiry in the Duty/Risk analysis to determine if the defendant is liable rests on whether the plaintiff can prove damages. "General damages involve mental or physical pain and suffering, inconvenience, loss of intellectual or physical enjoyment, or other losses of lifestyle which cannot be measured exactly in monetary terms." *Brown v. City of Monroe*, 135 So. 3d 792, 799 (La. Ct. App. 2d Cir. 2014). The Court finds that by a preponderance of the evidence that due to the negligence of Deputy Manuel, Plaintiff suffered emotional distress, embarrassment, which resulted in diagnoses of PTSD. In all, Plaintiff shall be awarded general damages in the amount of $10,000 for past and future mental anguish.

## IV. CONCLUSION

For the reasons stated above. Judgment will be entered for plaintiff Kayla Danielle Langley in the amount of **$10,000** plus cost of these proceedings.

**THUS DONE AND SIGNED** in Chambers on this 28th day of February 2023.

_____
JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**